WILLIAM H. MILTON & another *vs.* RICHARD G. COLBY
& another.

Where A., the owner of land, agrees to sell it to B., and to convey it to him by deed
when B. shall erect a house thereon, and B. agrees to erect a house thereon, and
that he will, on receiving a deed of the land, mortgage it to A. to secure the pur-
chase money, B. does not, by erecting the house, acquire any property therein, but
the same becomes a part of the realty ; and a mortgage of the house by B., before
he receives a deed of the land, conveys nothing to the mortgagee.

ASSUMPSIT to recover $307.75 had and received by tne
defendants to the plaintiffs' use, with interest from January 21st
1841. The action was commenced October 4th 1841, and
was tried at the last April term, before *Wilde*, J. who thus
reported the case : It was proved that on the 13th of May 1839,
a written agreement, (signed by the parties thereto, but not
sealed, acknowledged or recorded,) was made between John
Nesmith of the one part, and Andrew J. Simpson and John
Diggles of the other part, witnessing that said Nesmith had sold
to said Simpson and Diggles a lot of land in Belvidere (Lowell)
numbered 125 on a certain plan recorded in Middlesex registry
of deeds, for which they agreed to pay $600 in five annual
payments, with interest annually, and to erect a house on the
same immediately ; and that when the house should be erected,
said Nesmith would convey the land by deed, and take back a
mortgage to secure payment of the purchase money, with notes
in the usual form. Simpson and Diggles jointly erected a house
on the land, and completed the same in July or August 1839,
and on the 12th of November following made a division of the
house and land, by an agreement sealed, but not acknowledged
nor recorded till July 27th 1841. By this agreement, the east-
erly half of the house was apportioned to Diggles, and the west-
erly half to Simpson ; and they, after said agreement was made,
occupied in severalty, according to said division, till January
21st 1841, on which day Diggles mortgaged his half of the
house, as personal property, to the plaintiffs, to secure payment
of a note, given by him on the same day, for $307.75, *payable
on demand*, with interest. The condition of this mortgage deed

was, that it should be void if Diggles should pay said note *in one year* from its date. This deed was recorded by the clerk of the city of Lowell on the day after it was executed.

On the 12th of June 1841, Diggles, by a writing on the back of said mortgage deed, agreed and consented that the mortgagees (the plaintiffs) might sell the mortgaged property, at private sale or public auction, as they should deem most advantageous, and apply the proceeds of the sale to the payment of said note. On the 15th of June 1841, Diggles made application to a master in chancery for a discharge under the insolvent law of 1838, and a warrant issued, and notice of the issuing thereof was published on the same day. On the 21st of the same June, formal possession was taken of said house by the plaintiffs.

On the 10th of July 1841, the defendants were chosen as signees of the estate of Diggles, and on the 21st of said July they sold to Foster Nowal the said house for $475, (which was the full value thereof,) and conveyed the same to him, by deed of quitclaim, together with the land which is described in the agreement of partition between Simpson and Diggles, with covenants of warranty against all persons claiming under the defendants or their successors, or said Diggles or his heirs, or any other persons claiming under them or either of them. And the defendants, on the same day, as assignees of said Diggles, quitclaimed to said Nowal all the right of said Diggles in the abovementioned original agreement between John Nesmith and said Simpson and Diggles, and guarantied to defend and save harmless the said Nesmith from all persons claiming under said Diggles.

On the 23d of July 1841, the said Nesmith (never having made a conveyance to Diggles) conveyed to said Nowal the lot of land described in the aforesaid agreement of partition, and on which said Diggles's house was erected, by a deed of quit-claim, for the sum of $300 ; and on the same day said Nesmith conveyed to said Andrew J. Simpson the other (westerly) half of said lot by a like deed of quitclaim.

On the 4th of October 1841, the plaintiffs demanded of the defendants the amount of their aforesaid note, given to them by

Diggles, to be paid to them from the proceeds of the sale made by them of said house, as aforesaid ; which the defendants refused to do.

On the 27th of September 1841, the defendants, in order to expedite the progress of this action, which the plaintiffs were then about to commence, agreed to waive all objection to the action on the ground that the condition of Diggles's said mortgage had not been broken.

After all the evidence was adduced, the case was taken from the jury and submitted to the whole court on the foregoing report.

*Farley & A. R. Brown*, for the plaintiffs.

*Mellen & B. F. Butler*, for the defendants.

SHAW, C. J. The court are of opinion, that the plaintiffs took no interest, by the mortgage made to them by Diggles of the house in question, and therefore that they cannot recover in this action, even if in other respects they could maintain an action against the defendants, as assignees ; which is very doubtful. We say it is doubtful, because the defendants, as assignees of Diggles, acknowledged no right of the plaintiffs to the property, but on the contrary claimed the whole adversely, for the creditors. If therefore the plaintiffs had any title under their mortgage, subject to which the defendants took their assignment, the plaintiffs' remedy must be on the property, and not on the money for which the defendants sold their title. But the ground, upon which the court decide the case, goes not merely to the remedy, but to the right of the plaintiffs, and is, that by the mortgage they took no title, because Diggles had none which could pass by that deed. His right to the house was founded wholly on the agreement of May 13th 1839, between John Nesmith, owner of the land, on the one side, and Simpson and himself on the other. It was the common case of an agreement for a sale of the land, upon certain terms and conditions. Simpson and Diggles agreed to erect a house on it, and when the house should be erected, Nesmith was to convey the land by deed to them, upon which they were to mortgage the estate back to Nesmith, to secure the purchase money. The house was erected, but no deed was made by Nesmith ; and so it stood,

when Diggles mortgaged the house to the plaintiffs, as personal property.

It appears to us, that the effect of this agreement was not that the builders of the house were to have a property in the house, as a chattel ; on the contrary, it was to constitute a part of the realty, and pass with it ; and when the agreement should be executed according to its terms, it would enhance the value of the estate, as a security to Nesmith for the purchase money. The general rule is, that the erection of a building on the land of another makes it part of the realty, and of course it becomes the property of the owner of the soil ; and it is only in virtue of an express agreement between the owner and builder, that one can have a separate property in a building, as a chattel, with a right to remove it. The agreement between these parties, so far from being such an agreement, was in legal effect an agreement that the building and soil should be united and held together as one tenement ; and the security of the builders was in the personal agreement of the owner, by which they could require him, on complying with the terms of the agreement on their part, to convey the fee to them, by which they would obtain a legal title to the buildings with the soil. No interest then passed by Diggles's deed to the plaintiffs ; none in the building, for it was part of the realty ; and none in the real estate, because the fee was in Nesmith. *Plaintiffs nonsuit*